| | | |
|---|---|---|
| WESLEY STEVEN HOLTSCLAW | ) | |
| | ) | |
| V. | ) | NO. 2:10-CV-150 |
| | ) | |
| MICHAEL J. ASTURE, | ) | |
| Commissioner of Social Security | ) | |

## REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. This is an action for judicial review of the denial of plaintiff's application for disability insurance benefits under the Social Security Act following an adverse decision by an Administrative Law Judge ["AJL"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 8 and 15].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision

must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 40 years of age with a limited education. He had past relevant work experience as a drywall hanger, self-employed contractor, and a project manager, which was skilled requiring heavy exertion. Plaintiff alleged a disability onset date of January 6, 2008, alleging low back pain, high blood pressure, and gastroesophageal reflux disease.

The plaintiff's medical history is set out in the Commissioner's brief as follows:

> In October 2005, Holtsclaw saw a physician, seeking refills of his narcotic pain medication and complaining of shoulder pain (Tr. 258). Holtsclaw had been taking the narcotic pain medication "for some time" as a result of a torn knee ligament 11 years earlier (Tr. 258). The physician told Holtsclaw that an 11-year-old injury was not a reason to take narcotic pain medication (Tr. 258). The physician also noted that Holtsclaw had extremely good muscle tone with no weakness or sensory deficits (Tr. 258).
> Two years later, in December 2007, Holtsclaw visited the emergency room after injuring his back at work (Tr. 242). Holtsclaw asked for pain medication and then discharged himself from the hospital against a doctor's advice (Tr. 241, 244).
> Two weeks later, Holtsclaw began seeing general practitioner Dr. Shannon Hancock for pain in his back and right leg, with weakness in his right leg (Tr. 228). Dr. Hancock prescribed medication and set up an MRI (Tr. 228). The MRI showed disc desiccation with disc protrusion in three places and herniation in one location (Tr. 232). Twelve days after his initial appointment, Dr. Hancock noted that Holtsclaw had improved, with more symmetric reflexes, less weakness and tenderness, and a straight leg raising test that "was not really positive" (Tr. 227). Dr. Hancock recommended that Holtsclaw not work for three weeks (Tr. 227).
> Dr. Hancock then referred Holtsclaw to spinal specialist Dr. Dennis G. Harris (Tr. 296). Dr. Harris noted that Holtsclaw had tenderness and stiffness in his lower back, but mostly normal strength, normal reflexes, and an otherwise normal neurological exam (Tr. 298). One month later, in February 2008, Dr. Hancock noted that Holtsclaw's pain was controlled "for the most part" by medication (Tr. 231). However, Dr. Hancock decided to extend Holtsclaw's "no-work" restriction through

2

the end of February 2008 (Tr. 231).

During the next month, Holtsclaw returned to Dr. Harris (Tr. 299). Dr. Harris noted that Holtsclaw experienced moderate tenderness in his lower back, favored his right leg, and used a cane (Tr. 299). In April and May 2008, Dr. Harris administered back injections to Holtsclaw (Tr. 301-02). By July 2008, Holtsclaw said that the injections helped with his leg pain, but that he still had back pain (Tr. 304). Dr. Harris then obtained an MRI that showed spondylosis (osteoarthritis) with a disc herniation at one level, and protrusions and stenosis (narrowing) in three places (Tr. 331). A CT scan two weeks later showed tears in three places (Tr. 305-06, 331-32). That same month, Holtsclaw also had a normal nerve study (Tr. 311). An EMG (evaluation of electrical activity produced by muscles), however, showed evidence of radiculopathy (nerve problem) (Tr. 311). But the physician who performed the EMG thought that there was "a good prognosis for recovery" from the radiculopathy (except for some possible pain-induced muscle weakness) (Tr. 311).

Two months later, in October 2008, Dr. James K. Maguire noted that Holtsclaw had diffuse tenderness in his lower back and walked with a limp (Tr. 364). But Holtsclaw had normal motor and sensory exams and a negative straight leg raising test (Tr. 364).

That same month, consulting physician Dr. Eva Misra examined Holtsclaw (Tr. 260-61). She thought that Holtsclaw had back pain, noting that he had a positive straight leg raise test on the right, decreased strength in his right lower leg, reduced range of motion in his lower back, and sensory deficits indicative of neuropathy (Tr. 260-61). But Holtsclaw had no atrophy or limp, and had normal gait, station, and left leg strength (Tr. 260).

One month later, in November 2008, state agency reviewing physician Dr. James P. Gregory cited the observations of Dr. Misra (Tr. 269) in opining that Holtsclaw could lift and carry 20 pounds occasionally and 10 pounds frequently, as well as sit for six hours out of an eight-hour day and stand/walk for four hours out of an eight-hour day (Tr. 263). Dr. Gregory also indicated that Holtsclaw could never climb ladders, and only occasionally climb stairs, balance, stoop, kneel, crouch, crawl, and push/pull in a portion of his lower extremities (Tr. 263-64).

One month later, in December 2008, Holtsclaw had back surgery (Tr. 278). Holtsclaw claimed that the surgery only improved his pain by 10 percent (Tr. 325). But in March and April 2009, Dr. Hancock thought that Holtsclaw's back pain was fairly well-controlled with medication (Tr. 283, 314). She also noted that Holtsclaw had run out of hydrocodone (a narcotic pain medication) which he was supposed to use only for breakthrough pain (Tr. 314). One month later, Dr. Hancock again noted that Holtsclaw had run out of hydrocodone (Tr. 314). At his next appointment, Holtsclaw requested more narcotic pain medication (Tr. 323).

In the meantime, in April 2009, state agency reviewing physician Dr. Christopher W. Fletcher offered an almost identical assessment of Holtsclaw's abilities as Dr. Gregory (Tr. 286-89). Like Dr. Gregory, Dr. Fletcher opined that Holtsclaw could carry 20 pounds occasionally and 10 pounds frequently, as well as

3

sit for six hours out of an eight-hour day and stand/walk for four hours out of an eight-hour day (Tr. 287). Dr. Fletcher believed that Holtsclaw could never climb ladders or be exposed to hazards, and could only occasionally push/pull with his right leg, climb stairs, balance, stoop, kneel, crouch, and crawl (Tr. 287-90).

One month later, in May 2009, Pain Specialist Joe H. Bowder noted that Holtsclaw had pain, an antalgic (pain-altered) gait, limitations in his range of motion, and some decrease pinprick sensation in his back (Tr. 329-30). He also thought that Holtsclaw was "in some apparent distress" based upon the way that Holtsclaw sat and changed positions (Tr. 329). But Dr. Bowder observed that Holtsclaw did not show any pain behaviors during his exam and had normal extremities, strength, and reflexes (Tr. 329-30).

Two weeks later, Dr. Bowder administered a back injection to Holtsclaw (Tr. 334). After that injection, Holtsclaw had an improvement in his walking ability and a 30-percent reduction in pain (Tr. 336). Dr. Bowder then administered another injection (Tr. 336).

One month later, in July 2009, Dr. Bertram Henry examined Holtsclaw (Tr. 338-46). In contrast to Drs. Gregory and Fletcher, Dr. Henry opined that Holtsclaw could only occasionally lift and carry 10 pounds (Tr. 342). He also wrote that Holtsclaw could sit for only four hours out of an eight-hour day and stand/walk for one hour our of an eight-hour day (Tr. 343). Dr. Henry thought that Holtsclaw would need to sit in a recliner for the rest of the day (Tr. 343). He further indicated that Holtsclaw could only frequently balance or reach overhead with his right arm, and could never stoop, kneel, crouch, crawl, or climb stairs (Tr. 341-44). In support of these conclusions, Dr. Henry cited Holtsclaw's history of back surgery and noted rotator cuff syndrome in his right shoulder, impaired balance, positive Romberg test (test for balance problems), absent right ankle reflex, and residual sensory deficit (Tr. 343-44).

At Holtsclaw's second hearing, medical expert Susan M. Bland testified that Holtsclaw could lift 20 pounds occasionally and 10 pounds frequently (Tr. 25). She also believed that Holtsclaw could sit for six hours out of an eight-hour day, but would do best with an option of switching between sitting and standing (Tr. 25). Dr. Bland further opined that Holtsclaw could stand and walk for two to four hours out of an eight-hour day (Tr. 27). In addition, she indicated that Holtsclaw could only occasionally engage in postural activities (i.e. climbing, balancing, stooping, kneeling, crouching, and crawling), and was unable to climb ladders or work at heights or around hazards (Tr. 25).

Dr. Bland acknowledged that her opinion differed from that of Dr. Henry, but pointed out that Dr. Henry did not describe any findings that would explain his limitations, especially his requirement that Holtsclaw sit in a recliner for much of the workday (Tr. 26). Dr. Bland was unsure how Dr. Henry justified those limitations, except for "perhaps" relying on Holtsclaw's pain complaints (Tr. 26). She also pointed out that although Dr. Henry wrote that Holtsclaw had rotator cuff syndrome in his right shoulder, Dr. Henry did not provide any exam findings to support that diagnosis (Tr. 25).

4

[Doc. 16, pgs. 3-7].

Two administrative hearings were held. At the conclusion of the first hearing on June 16, 2009, after listening to the plaintiff's testimony, the ALJ decided that a neurological exam was needed, and sent the plaintiff to be evaluated by Dr. Henry, as set out hereinabove. (Tr. 49).

At the second hearing, after calling Dr. Bland as a "medical expert," the ALJ called Ms. Cathy D. Sanders, a vocational expert ["VE"]. He asked her to assume that the plaintiff had the limitations set out by Dr. Bland in her testimony, and asked if there were any jobs. She stated that "with the limitation of standing and walking, there are primarily sedentary jobs." She stated that there were a few light jobs, such as non-valet parking attendant and host/greeter in a restaurant, with 650 in the region and only 16,000 in the nation. As for sedentary, "given the need to change position, sitting and standing, she identified unarmed gate guard, information clerk, entry level credit checkers, and filing clerks. She said there were 1,100 such jobs in the region and 60,000 in the nation. (Tr. 31-32). If he had the limitations set out in Dr. Henry's report, there would be no jobs because the sitting, standing and walking "only totals up to five or six hours." (Tr. 33).

In his hearing decision, the ALJ found that the plaintiff had severe impairments of chronic low back and right leg pain with a history of discectomy. He then found that plaintiff had "the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(a)." (Tr. 17).[1] He gave "greater weight to Dr. Bland's testimony which is

---

[1] It should be noted that § 404.1567(a) defines *sedentary work*. This will be discussed further *infra*.

5

based upon the objective evidence of record." In the context of that paragraph, this was in contrast to the opinion of Dr. Misra "based on the brevity of the examination," and Dr. Henry which "had inconsistencies and was not supported by the findings." (Tr. 18).

He found the plaintiff could not perform any of his past relevant work. However, he found that because the plaintiff had "a residual functional capacity for the full range of light work..." he was not disabled under Rule 202.25 of the Medical-Vocational Guidelines. He then stated that "even if the claimant were limited to sedentary work, he would nonetheless be found 'not disabled' based upon vocational expert testimony." (Tr. 19).

As an initial matter, the record is devoid of evidence, be it from the State Agency, Dr. Henry, or Dr. Bland that the plaintiff can perform the full range of light work. The "full range" of work in this category requires the ability to do "a good deal of standing and walking," more than the 4 hours total standing or walking opined by the State Agency doctors and Dr. Bland. This finding was erroneous and this Court would believe it was a typographical error because the ALJ referenced the definition of sedentary work in making it, were it not for the fact that he repeated it at the end of the decision and alternatively found there were sedentary jobs plaintiff could perform. The issue of sedentary jobs will be addressed further on in this report and recommendation.

Plaintiff asserts that the ALJ erred by not setting forth the jobs identified by the VE in his hearing decision. There was no doubt what jobs he was referencing or their numbers when read in conjunction with Ms. Sanders' testimony.

The Court likewise finds no merit in the plaintiff's argument regarding the alleged

6

failure to utilize *SSR 96-9p*. The utilization of Ms. Sanders and her testimony adequately comports with the goals of this Ruling.

Plaintiff apparently argues that the plaintiff is at least entitled to a period of disability between his alleged onset date and his surgery. This Court is not going to micro-manage and delve into the issue of whether a person was disabled for some finite period within a long course of medical treatment, but will confine its role to evaluating the existence of substantial evidence to support the Commissioner's decision and errors of law. In any event, as pointed out by the Commissioner, the findings of Dr. Gregory and Dr. Hancock during that period provide a basis for rejecting that contention.

Plaintiff asserts that the ALJ was in error in not finding him fully credible. Credibility places a lesser role in this case than most, being overshadowed by the competing levels of severity opined by the doctors. However, the ALJ observed the plaintiff, read and listened to all of the evidence, and determined that while the plaintiff experienced some pain which limited him from a vocational standpoint, his level of pain did not preclude him from the RFC which the ALJ found. Even though the ALJ erred in finding him capable of a full range of light work, for the reasons hereafter explained, there is substantial evidence that the plaintiff could, with his symptoms, including a degree of pain, perform a reduced range of sedentary work.

All that this leaves is a determination of whether there was substantial evidence to support the testimony of the VE that plaintiff could perform a substantial number of jobs. In other words, the stark question is presented about whether Dr. Bland and the State Agency doctors are sufficient to provide substantial evidence for this finding. In other words, did the

7

ALJ adequately state why he favored those opinions over that of Dr. Henry?

Obviously, it is suspicious when a plaintiff is sent by the Commissioner to a neurologist to determine RFC, and then that neurologist's opinion is given little if any weight. However, suspicion is meaningless if in fact the prevailing law allows for controlling weight to be given to yet another, non-examining expert if certain criteria are met. In the Sixth Circuit, this practice is sanctioned by the case of *Barker v. Shalala*, 40 F.3d 789 (6th Cir. 1994). In *Barker*, the ALJ had sent Mr. Barker to a psychologist for a consultative exam. That psychologist gave diagnoses and opinions which would indicate a severe mental impairment. The ALJ called another psychologist to attend the hearing and testify as a medical advisor. That psychologist read all the plaintiff's mental history, observed him at the hearing and listened to his testimony. The psychologist then testified that the plaintiff's mental impairments were no more than mild, specifically addressing and discounting the first psychologist's contrary opinions. The ALJ relied more heavily on the medical advisor's testimony and opinions, although he discussed and considered the opinions of the consultative examiner in his hearing decision and to a degree, in his hypothetical to the VE. *Id.*, at 792.

Plaintiff therein argued that the ALJ improperly ignored or rejected the findings of the consultative examiner and accepted those of the medical advisor. Specifically plaintiff argued that the consultative examiner's "findings are entitled to greater weight...because Dr. Weiss was merely a medical advisor called to testify at the hearing and had not made a personal examination of Mr. Barker. Without a valid, explicitly stated rationale for rejecting the findings of Dr. Ruff...the ALJ's conclusion that the plaintiff's mental limitations did not

8

preclude him from gainful activity were not supported by substantial evidence." *Id.*, at 794.

The Sixth Circuit stated that "the findings of Dr. Ruff (the consultative examiner) were neither ignored nor rejected...." They stated that after recognizing some discrepancies between the two psychologist's opinions, "the ALJ noted that they were mainly differences of degree and not of kind." However, they then proceeded to point out some differences that were not merely of degree but of substance. Nonetheless, the ALJ included the consultative psychologist's diagnosis of a personality disorder in his hypothetical. The Sixth Circuit concluded that the "ALJ was entitled to accept Dr. Weiss' evaluation of the severity of the plaintiff's impairments in preference to Dr. Ruff's. Dr. Weiss had access to the entire medical record...[and] observed Mr. Barker at the administrative hearing, listened to his testimony, and based his conclusions in part on his first-hand observation of Mr. Barker." *Id.*, at 794. Accordingly, they affirmed the Commissioner's finding that the plaintiff therein was not disabled.

This Court reads *Barker* as saying that the ALJ may as finder of fact accept the opinion of a well-prepared non-examining expert who testifies at the hearing over that of a consultative examiner, at least as to the issue of severity, but not apparently as to the existence of a condition. Several other district courts in this circuit have followed this interpretation of *Barker,* if not an even broader one regarding treating physicians. *See, Bourdo v. Commissioner of Social Security,* 2008 WL 724722 (W.D.Mich. 2008), *Rogers v.Astrue*, 2009 WL 691989 (E.D. Ky. 2009), *Dawson v. Commissioner of Social Security*, 2010 WL 5566822 (S.D. Ohio 2010), and *Swafford v. Astrue*, 2010 WL 2612325 (E.D. Ky, 2010).

9

In the present case, both Dr. Bland and Dr. Henry found that the plaintiff suffered from a severe back impairment and pain. Dr. Bland explained in her testimony that in her opinion, the plaintiff could sit with a change of positions and stand and walk for enough hours in a workday to perform sedentary work. She also explained her disagreements with Dr. Henry regarding severity and questioned confusing portions of his opinion. The ALJ pointed out all of these issues in his opinion and concluded that Dr. Bland's testimony was "based upon the objective evidence of record," and that "Dr. Henry's report had inconsistencies and was not supported by the findings." (Tr. 18).

The issue resolved by the ALJ was "one of degree" as in *Barker*. He explained his rationale for adopting the conclusions of Dr. Bland over those of Dr. Henry. This Court must follow the Sixth Circuit, and here the law seems clear. The Court must find that there was substantial evidence to support the ALJ's question to the VE and his determination of RFC. Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 8] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 15] be GRANTED.[2]

                            Respectfully submitted:

                             s/ Dennis H. Inman
                             United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).